# UNITED STATES BANKRUPTCY COURT
## Eastern District of Virginia
### Richmond Division

In re:

| | |
|---|---|
| Chamberlayne Auto Sales & Repair, Inc., | Case No. 17-30335-KLP |
| Debtor. | Chapter 7 |

Peter J. Barrett, Trustee,
      Plaintiff,

v.                                Adv. Pro. No. 17-04534-KLP

Vehicle Acceptance Corporation,
      Defendant.

## <u>MEMORANDUM OPINION</u>

Defendant Vehicle Acceptance Corporation ("VAC") has moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), Fed. R. Civ. P. 12(b)(6),[1] to dismiss the amended complaint (the "Amended Complaint") filed by Peter J. Barrett, Trustee for Debtor Chamberlayne Auto Sales & Repair, Inc. (the "Debtor"). In the Amended Complaint, Barrett (the "Trustee") seeks to avoid and recover certain postpetition transfers made by the Debtor to VAC, to avoid and recover certain prepetition transfers that occurred within ninety days prior to the Debtor's bankruptcy filing, and to be awarded damages for VAC's alleged violation of the automatic stay.

The Trustee argues that VAC's asserted security interests are invalid because VAC entered into an unlawful financing agreement with the Debtor. That agreement required the Debtor to give VAC physical possession of titles

---

[1] Made applicable herein by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 7012(b).

to cars the Debtor had purchased for resale.  The Trustee's allegation that VAC violated the automatic stay stems from VAC's alleged postpetition collection of funds from the Debtor by illegally refusing to turn over vehicle titles in order to coerce the Debtor into making payments.  VAC takes the position that its agreement with the Debtor gave it a valid and enforceable security interest in the Debtor's property and that the Amended Complaint fails to state a claim upon which relief may be granted because each count relies on the erroneous assumption that its floor planning agreement was unlawful and unenforceable.

## Background

On January 24, 2017, the Debtor filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  The Trustee was appointed to administer the Debtor's bankruptcy estate.

On October 18, 2017, the Trustee filed the Amended Complaint,[2] which consists of four counts.  Count I requests that the Court enter a declaratory judgment that VAC's floor planning agreement was unlawful and is not enforceable.  Count II requests the avoidance of postpetition transfers pursuant to 11 U.S.C. § 549 and recovery from VAC pursuant to 11 U.S.C. § 550 in the amount of $56,701.90.  Count III seeks damages for violation of the automatic stay pursuant to 11 U.S.C. § 362(k).  Count IV requests the avoidance and recovery of prepetition transfers pursuant to 11 U.S.C.

---

[2] The Amended Complaint was filed one day after the original complaint.  The amendments do not appear to be substantive; rather, they appear to correct certain inconsistencies in the numbering and some wording in the original complaint.

§§ 547(b) and 550 in the amount of $135,769.93.

On November 22, 2017, VAC filed its motion to dismiss the Amended

Complaint for failure to state a claim (the "Motion").  The Trustee filed his

response to the Motion on December 6, 2017 (the "Response").  A hearing on

the Motion was held on December 13, 2017.

## Jurisdiction and Venue

This adversary proceeding is a core proceeding pursuant to 28 U.S.C.

§ 157 (b)(2)(A),(E),(F) and (O).  The Court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1334, and venue in this Court is proper under 28

U.S.C. § 1409.

## Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency

of a complaint.  *Birmingham v. PNC Bank, N.A. (In re Birmingham)*, 846

F.3d 88, 92 (4th Cir. 2017).  When ruling on a motion to dismiss, the Court

must assume that the facts alleged in the complaint are true.  *Eastern Shore*

*Mkts, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000);

*Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  All reasonable

inferences must be made in the plaintiff's favor.  *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

The United States Supreme Court has stated that "[t]o survive a

motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 570 (2007)).   Under this plausibility standard, a

plaintiff must demonstrate more than a "sheer possibility that a defendant

has acted unlawfully." *Iqbal*, 556 U.S. at 678.   Thus, a plaintiff must

articulate facts that, when accepted as true, state a claim upon which relief

can be granted and cannot rely upon "labels and conclusions, and a formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Determining whether a complaint states a plausible claim for relief is "a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Francis v. Giacomelli*, 588 F.3d at 193.   "[A]

plaintiff is not required to plead facts that constitute a prima facie case in

order to survive a motion to dismiss" but allegations must be sufficient

"enough to raise a right to relief above the speculative level." *Coleman v. Md.*

*Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Twombly,* 550 U.S.

at 555).

## Facts

The following facts are alleged by the Trustee.   On July 16, 2015, the

Debtor, a used automobile dealer, and VAC entered into an agreement (the

"Agreement")[3] whereby VAC would finance the acquisition of vehicles

purchased by the Debtor for resale.   The Agreement, prefaced by a one-page

---

[3] A copy of the Agreement is attached as Exhibit A to the Trustee's Response and, by
agreement of the parties, is deemed a part of the Amended Complaint.   The
Agreement includes a credit limit of $150,000.00 and replaces the original contract
between the parties dated December 29, 2014, which provided a credit limit of only
$50,000.00.   A copy of the original contract is attached to the Motion as Exhibit B.

application entitled "Dealer Floor Plan Agreement," includes an 18-page document entitled "Demand Promissory Note and Security Agreement" that provides that VAC may advance funds to the Debtor for the purpose of enabling the Debtor to purchase and hold inventory (a term defined as including all vehicles) for resale. The Agreement grants VAC a security interest in the Debtor's inventory.[4]

Appended to the Agreement is a one-page document signed by VAC and the Debtor entitled "Basic Vehicle Acceptance Corporation Guidelines" (the "Guidelines"). The Guidelines list "basic rules you should be aware of regarding your Vehicle Acceptance Corporation Floor plan account." One of the rules included in the Guidelines and confirmed by the Debtor's signature states the following in bold print: "All original vehicle title documents will be held by Vehicle Acceptance Corporation." The Amended Complaint alleges that the arrangement with VAC required the Debtor to give VAC physical possession of the titles to vehicles purchased by the Debtor, even though VAC was not listed as a lienholder on the title.[5]

---

[4] The Amended Complaint does not include a specific allegation that the Debtor was a "motor vehicle dealer" or "dealer" as defined in Va. Code Ann. § 46.2-1500; however, the Dealer Floor Plan Agreement and Demand Promissory Note and Security Agreement that, by "agreement of the parties" are deemed part of the Amended Complaint (Response, at 5), identify the Debtor as a Virginia Used Retail Dealer (Virginia Dealer License: 39033) located at 2425 Chamberlayne Ave., Richmond, Virginia, and both parties have treated the Debtor as a motor vehicle dealer in their pleadings. For purposes of this Motion, the Debtor will be considered a "motor vehicle dealer" as defined in Va. Code Ann. § 46.2-1500.

[5] The Agreement and the Guidelines are two separate documents, with neither making reference to the other.

During the ninety days prior to the January 24, 2017, petition date, the Debtor made payments to VAC in the total amount of $135,769.93. Between January 26, 2017, and February 16, 2017, the Debtor made postpetition payments to VAC totaling $56,701.90.  The payments were made so that VAC would release the titles to vehicles the Debtor had sold and were made without the knowledge or consent of the Trustee.

After the bankruptcy filing, VAC retained possession of titles to several vehicles that had been purchased by the Debtor for resale.  The Trustee repeatedly demanded that VAC turn over the titles to those vehicles. The Trustee also demanded that VAC return the postpetition payments it had received from the Debtor.  VAC rejected these demands.

Counsel for Honor Financial, an entity that had purchased the retail installment sales contracts for some of the vehicles sold by the Debtor, contacted the Trustee because the titles held by VAC had not been delivered to the purchasers at the time of sale and, as a result, the Division of Motor Vehicles could not process title documents in the new owners' names and could not record Honor Financial as lienholder.  Honor Financial demanded that the Trustee resolve this problem.  After the Trustee retained counsel and prepared to initiate legal proceedings, VAC returned some of the titles necessary for Honor Financial to complete the transactions.

Although VAC knew, or should have known, that the Debtor had filed bankruptcy, it did not seek relief from the automatic stay and continued to

operate as if no order for relief had been entered.  VAC collected funds from the Debtor by holding vehicle titles in order to force the Debtor to continue to make payments and as a result, the Trustee and bankruptcy estate incurred damages, including attorneys' fees.

### Analysis

In the Amended Complaint, the Trustee asserts that Virginia law prohibits any creditor from taking possession of a title to a vehicle unless the creditor is listed as the lienholder on the title and that VAC's practice of taking physical possession of the titles as a form of security for its loan was illegal.  The Trustee does not contend that the Agreement fails to grant VAC a security interest in the Debtor's inventory.  Nor does the Trustee assert that VAC's security interest in the Debtor's inventory is avoidable because VAC failed to perfect its lien properly by filing a UCC financing statement pursuant to Va. Code Ann. § 8.9A-301.[6]  There is no dispute that the financing statement was, in fact, properly filed.  Rather, the Trustee argues that VAC's otherwise properly perfected security interest is invalid because

---

[6] Although in the Amended Complaint, the Trustee points to Va. Code Ann. § 46.2-637, which provides that "a security interest in a motor vehicle, trailer, or semitrailer which is held for sale shall be perfected only as provided in §§ 8.9A-301 through 8.9A-52.7," the Amended Complaint does not include an allegation that VAC failed to comply with these provisions.  In a letter from the Trustee to counsel for VAC dated April 18, 2017, a copy of which is attached to the Amended Complaint as part of Exhibit B, the Trustee asserts that VAC failed to file a UCC financing statement in connection with its security interest in the Debtor's inventory.  However, Exhibit B also includes a copy of an email from VAC's counsel dated May 17, 2017, informing the Trustee that VAC filed its UCC against the inventory on December 31, 2014. A copy of the recorded UCC Financing Statement filed by VAC is attached as Exhibit A to the Motion.  It is clear from the pleadings and exhibits, as well as the acknowledgement of counsel to the trustee during the hearing on the Motion, that VAC's timely filing of a UCC financing statement is not disputed.

VAC held the titles to vehicles that the Debtor purchased for resale until

after those vehicles were sold to a consumer, a practice the Trustee claims is

unlawful.  The Trustee asserts no other basis for avoiding or invalidating

VAC's lien.  Thus, if it is not impermissible for a motor vehicle dealer's floor

plan lender to hold the titles to vehicles subject to its lien, the Trustee's

declaratory judgment and avoidance counts must be dismissed.

Virginia's motor vehicle laws are contained in Title 46.2 of the Virginia

Code.  Chapter 15 of Title 46.2, Va. Code Ann. §§ 46.2-1500 – 46.2-1582, is

devoted exclusively to laws affecting motor vehicle dealers.  As a motor

vehicle dealer operating in Virginia, the Debtor is subject to and governed by

the provisions of this Chapter.

One provision included in Chapter 15, Va. Code Ann. § 46.2-1542,[7]

clearly contemplates that there may be situations in which a dealer does not

---

[7]        A.  Notwithstanding §§ 46.2-617 and 46.2-628, whenever a dealer
           licensed by the Board sells or conditionally sells and delivers to a
           purchaser a motor vehicle, the dealer may issue temporary license
           plates and a certificate of temporary registration.  The temporary
           license plates and the certificates for temporary registration shall be
           obtained from the Commissioner or may be printed according to terms
           set by the Commissioner and may be issued if (i) the dealer has the
           title or the certificate of origin for the vehicle or (ii) is unable at the
           time of sale to deliver to the purchaser the certificate of title or
           certificate of origin for the vehicle because the certificate of title or
           certificate of origin is lost or is being detained by another in possession
           or for any other reason beyond the dealer's control.  The temporary
           registration certificate shall bear its date of issuance, the name and
           address of the purchaser, the identification number of the vehicle, the
           registration number to be used temporarily on the vehicle, the name of
           the state in which the vehicle is to be registered, the name and
           address of the person from whom the dealer acquired the vehicle, and
           whatever other information may be required by the Commissioner.  A
           copy of the temporary registration certificate and a bona fide buyer's

8

order shall be delivered to the purchaser and shall be in the
possession of the purchaser at all times when operating the vehicle.
One copy of the certificate shall be retained by the dealer, which copy
may be retained in electronic format under terms set by the
Commissioner, and shall be subject to inspection at any time by the
Department's agents.  The original of the certificate shall be
forwarded by the dealer to the Department directly on issuance to the
purchaser if the vehicle is to be titled outside the Commonwealth,
along with the physical or electronic application for title. The issuance
of a temporary certificate of registration to a purchaser pursuant to
this section shall have the effect of vesting sufficient interest in the
vehicle in the purchaser for the period that the certificate remains
effective for purposes of allowing the purchaser (a) to obtain and
provide insurance coverage for the vehicle, including insurance
indemnifying the purchaser against liability or providing for recovery
for damage to or loss of the vehicle and (b) to operate the vehicle as if
the purchaser had full rights of ownership, all subject to cancellation
by applicable law or agreement between the dealer and the purchaser
prior to the time the dealer submits an application for title along with
all required fees. If the dealer or purchaser exercises the statutory or
contractual rights to cancel a purchaser's contract to buy a vehicle
before application for title to the vehicle has been submitted to the
Department in the name of the purchaser, the dealer shall have the
right to possession of the vehicle without claim of possession by the
purchaser within 24 hours of written or oral notice to the purchaser
and without regard to the provision of Title 8.9A, provided the dealer's
right to possession is enforced otherwise in accordance with law and
without breach of the peace. In the event the dealer regains possession
of the vehicle, in the same condition, normal wear and tear excepted,
as delivered to the purchaser, the purchaser shall have the right to
possession of any trade-in and return of any down payment, and if the
dealer fails to return the trade-in and/or down payment the dealer
may be held liable under § 59.1-200 of the Virginia Consumer
Protection Act (§ 59.1-196), in addition to any other rights and
remedies available by statute or contract.
B.  A temporary certificate of registration issued by a dealer to a
purchaser pursuant to this section shall expire when the certificate of
title to the vehicle is issued by the Department in the name of the
purchaser or vehicle ownership is transferred in accordance with §
46.2-603.1 and the permanent license plates have been affixed to the
vehicle, but in no event shall any temporary certificate of registration
issued under this section be effective for more than 30 days from the
date of its issuance. In the event that the dealer fails to produce the
old certificate of title or certificate of origin to the vehicle, fails to
transfer vehicle ownership in accordance with § 46.2-603.1, or fails to
apply for a replacement certificate of title pursuant to § 46.2-632,
thereby preventing delivery to the Department or purchaser before the

expiration of the temporary certificate of registration, the purchaser's temporary rights may terminate and the purchaser shall have the right to return the vehicle to the dealer and obtain a full refund of all payments made toward the purchase of the vehicle, provided the purchaser provides notice to the dealer of a decision to return the vehicle before issuance of a title for the vehicle by the Department, less any damage to the vehicle incurred while ownership was vested in the purchaser, and less a reasonable amount for use not to exceed one-half the amount allowed per mile by the Internal Revenue Service, as provided by regulation, revenue procedure, or revenue ruling promulgated pursuant to § 162 of the Internal Revenue Code, for use of a personal vehicle for business purposes.

C.  Notwithstanding subsection B, if the dealer fails to deliver the certificate of title or certificate of origin to the purchaser or fails to transfer vehicle ownership in accordance with § 46.2-603.1 within 30 days, a second temporary certificate of registration may be issued. However, the dealer shall, not later than the expiration of the first temporary certificate, deliver to the Department an application for title, copy of the bill of sale, all required fees and a written statement of facts describing the dealer's efforts to secure the certificate of title or certificate of origin to the vehicle. On receipt of the title application with attachments as described herein, the Department shall record the purchaser's rights hereunder to the vehicle and may authorize the dealer to issue a second 30-day temporary certificate of registration. If the dealer does not produce the certificate of title or certificate of origin to the vehicle before the expiration of the second temporary certificate, the purchaser's rights to the vehicle under this section may terminate and he shall have the right to return the vehicle as provided in subsection B.

D.  If the dealer is unable to produce the certificate of title or certificate of origin to the vehicle or transfer vehicle ownership in accordance with § 46.2-603.1 within the 60-day period from the date of issuance of the first temporary certificate, the Department may extend temporary registration for an additional period of up to 90 days, provided the dealer makes application in the format required by the Department. If the dealer does not produce the certificate of title or certificate of origin to the vehicle or transfer vehicle ownership in accordance with § 46.2-603.1 before the expiration of the additional 90-day period, the purchaser's rights hereunder to the vehicle may terminate and he shall have the right to return the vehicle as provided in subsection B.

E.  The Commissioner, on determining that the provisions of this section or the directions of the Department are not being complied with by a dealer, may suspend, after a hearing, the right of the dealer to issue temporary certificates of registration.  The provisions of this section shall also apply to watercraft trailers and watercraft trailer

have possession of the certificate of title to a vehicle when the vehicle is delivered to a customer.  That section authorizes a dealer to issue temporary license plates and a certificate of origin for the vehicle when the dealer "is unable at the time of sale to deliver to the purchaser the certificate of title . . . because [it] . . . is lost or is being detained by another in possession or for any other reason beyond the dealer's control."  The same provision allows the effectiveness of a temporary registration to be extended beyond the initial 30-day period if the dealer is unable to produce the certificate of title within that time frame.  Va. Code Ann. § 46.2-1542(C),(D).  While neither this provision nor any other statute in Title 46.2 specifically authorizes a floor plan lender to hold vehicle titles (or prohibits the practice), § 46.2-1542's language is tailored to address circumstances in which the dealer must retrieve a certificate of title from its floor plan lender in order to complete the sale process.  If the legislature had intended to require a dealer to deliver the certificate of title to a customer at the time of the vehicle's delivery to the customer, one would question the reason for enacting § 46.2-1542.

The District Court for the Eastern District of Virginia has acknowledged on more than one occasion that under Virginia law a dealer may effectuate a sale without having possession of the certificate of title at the time the vehicle is delivered to the customer.  *See Tripp v. Charlie Falk Auto*, No. CIV. 3:00CV512, 2001 WL 1105132, at *4-5 (E.D. Va. Aug. 22,

_____

dealers but shall not apply to all-terrain vehicles and off-road motorcycles.
Va. Code Ann. § 46.2-1542.

2001) ("[T]his Court could conclude that ownership in this transaction was passed upon the signing of the Re-assignment of Title form, which is recognized as a legitimate means of transferring title and therefore would effectuate a valid transfer of ownership."), *aff'd sub nom. Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 F. App'x 622 (4th Cir. 2008); *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535 (E.D. Va. 2001) (Automobile dealer's failure to order new license plate for truck did not violate its statutory duty to transfer title on truck in timely manner, where dealer transferred title by timely completing reassignment of title form, citing Va. Code Ann. §§ 46.2-628, 46.2-1542).  Motor vehicle dealers, such as the Debtor, operate differently from private sellers of motor vehicles, and Virginia's titling laws are designed to accommodate dealers' standard business practices by imposing upon them a different scheme of statutory oversight.

In arguing that VAC's practice of holding certificates of title constitutes a crime, the Trustee cites Va. Code Ann. § 46.2-618.[8]  Section

---

[8]Va. Code Ann. § 46.2-618 provides that:

> A.  It shall constitute a Class 1 misdemeanor for any person in the Commonwealth to possess a certificate of title issued by the Commissioner to a person other than the holder thereof, unless the certificate of title has been assigned to the holder as provided in this title. This section, however, shall apply neither to secured parties who legally hold certificates of title as provided in this title nor to the spouse of the person to whom the certificate of title was issued.
> B.  When a purchaser of a motor vehicle is unable to obtain the title for such vehicle because the motor vehicle dealer who sold the vehicle to the purchaser is no longer engaged in business in the Commonwealth as a dealer as defined in § 46.2-1500 and the purchaser must petition a court of competent jurisdiction to direct that a person other than the dealer holding the title to release the title to the purchaser, the Court may order the title be released to the buyer if

46.2-618 states that it is a Class 1 misdemeanor for any person other than the holder to possess a certificate of title.  The Trustee maintains that the motor vehicle laws, including § 46.2-618, were carefully crafted to require the immediate transfer of a certificate of title when possession of a vehicle is given to a buyer in order to protect innocent consumers from being victimized by unscrupulous sellers.

It is true that one of the fundamental purposes of Virginia's motor vehicle registration laws "is to prevent the sale of stolen or other unregistered vehicles in this State."  *U.S. Fid. & Guar. Co. v. Trussell*, 208 F. Supp. 154, 158-59 (W.D. Va. 1962).  In that same vein, "[t]he motor vehicle titling statutes . . . were enacted to protect the public by providing for the issuance of certificates of title as evidence of ownership of motor vehicles and to provide potential buyers and creditors with a single place where information about the status of motor vehicles could be found."  *Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.,* 506 S.E.2d 14, 15 (Va. 1998). Nevertheless, it is evident that § 46.2-618 and similar statutes[9] are intended to address circumstances other than those involving dealer transactions, as is

---

the court finds that the purchaser has a right to the title superior to that of the person holding the title under the laws of the Commonwealth. The court may also, upon finding that the person holding the title must release it, award reasonable attorney fees, expenses, and costs incurred by the purchaser in making the petition to the court.

[9] *See, e.g.*, Va. Code Ann. § 46.2-637, requiring a security interest in a vehicle to be shown on the certificate of title, but specifically excluding "those [vehicles] in inventory held for sale"

clearly demonstrated by the inclusion of specific language in § 46.2-618

exempting secured lenders from its application.[10]

The Trustee has cited no statute that specifically prohibits a floor plan

lender from retaining possession of certificates of title to vehicles that are

collateral for its loan when the lender is not listed as lienholder on the titles.

Section 46.2-637 of the Virginia Code, a statute the Trustee claims prohibits

the lender from holding titles, states that a security interest in a motor

vehicle that is inventory held for sale "shall be *perfected only* as provided in

§§ 8.9A-301 through 8.9A-527." Va. Code Ann. §46.2-637 (emphasis added).

Contrary to the Trustee's assertion, this language does not prohibit a floor

plan lender from possessing certificates of title; rather, it provides that the

lender's lien shall not be *perfected* unless the lender has complied with

Virginia's version of the Uniform Commercial Code, which requires the filing

of a financing statement. *See* Va. Code Ann. §§ 8.9A-301 – 8.9A-527.  Had

VAC failed to comply with these provisions, its lien on the Debtor's inventory

would be subject to avoidance despite its having retained possession of the

certificates of title.  But again, there is no allegation that VAC did not comply

with §§ 8.9A-301 – 8.9A-527.

---

[10] Section 46.2-618 authorizes a purchaser of a vehicle from a dealer that has gone
out of business to petition the court to direct a third party holding the title to release
it to the purchaser if the court finds that the purchaser has a superior right. *See
supra* note 7.  Once again, the statutory language appears to contemplate
circumstances in which a floor plan lender may have retained possession of
certificates of title securing its inventory lien.

The Office of the Comptroller of the Currency (OCC) publishes a Handbook to guide OCC examiners in their oversight and supervision of the lending practices of national banks and federal savings associations.  The Handbook is composed of various booklets, among them one entitled "Floor Plan Lending," housed in the section of the Handbook titled "Safety and Soundness."[11]  Although VAC may not be subject to the OCC's jurisdiction, the booklet offers a comprehensive overview of "prudent risk management guidelines" and "procedures to guide examiners in evaluating the impact of floor plan lending activities on a bank's risk profile and financial condition." Comptroller's Handbook, Floor Plan Lending, Version 1.2 at 1 (2017).  In the absence of any specific restrictions otherwise imposed by federal or state law, one may reasonably assume that the lending practices recommended in the OCC's Handbook are generally considered acceptable.

The OCC's Handbook states that in a typical floor plan arrangement, the dealer executes a loan agreement granting the bank a continuing security interest in the dealer's inventory, receipts and accounts receivable, and the bank perfects its security interest pursuant to article 9 of the Uniform Commercial Code. *Id*. at 3.  When discussing the risks associated with floor plan lending, the OCC emphasizes the need for the bank to maintain an effective risk management system, since a lender who is unable to exercise full control over the inventory may find itself in a "sold-out-of-trust position."

---

[11] The booklet is in the Handbook's subcategory "Asset Quality" and may be found at https://www.occ.treas.gov/publications/publications-by-type/comptrollers-handbook/floor-plan-lending/pub-ch-floor-plan.pdf.

*Id.* at 9.  The OCC offers a comprehensive list of steps a lender should take to protect itself from a loss, including monitoring the dealer's inventory and conducting regular inspections.  "[F]loor  plan lenders should regularly inspect and verify the inventory, *take control of title documents*, and, if necessary, take physical control of the inventory . . . ."  *Id.* at 18 (emphasis added).[12]  It appears that in the view of the OCC, a prudent floor plan lender may hold the title documents to its collateral even when perfection of its security interest requires the filing of a financing statement.  This may help explain the Trustee's inability to point to any statutes or regulations prohibiting the practice.

As previously observed, Virginia's motor vehicle titling laws, including those cited by the Trustee, were enacted to protect innocent parties.  Allowing a floor plan lender to hold certificates of titles does not thwart this legislative intent.  While a floor plan lender may potentially reduce its risk of loss by controlling title documents, the practice does not eliminate the possibility that its collateral may be subject to the superior claim of a dealer's customer or the customer's lender.

---

[12] The OCC notes that lenders are subject to certain regulatory and compliance requirement and that "[i]f a floor plan lender structures a loan in violation of statutory and regulatory requirements, it may face a greater difficulty in defending its contractual rights . . . .  It could also face consequences for noncompliance, such as a civil monetary penalty and lender liability lawsuits."  *Id.* at 9.  The Trustee has cited no statutory or regulatory prohibitions against a floor plan lender possessing certificates of title to motor vehicles subject to its inventory lien and held for resale by a motor vehicle dealer.

A case decided by a district court in the Southern District of Texas,
involving a factual scenario similar to the case before this Court, found that a
"buyer in the ordinary course of business" has superior rights over the floor
plan lender, despite the lender's having retained possession of the certificate
of title, when the proceeds of sale were not passed on by the dealer to the
lender. *Lundy v. First Nat'l Bank of El Campo (In re Dota)*, 288 B.R. 448
(S.D. Tex. 2003) (buyer in the ordinary course of business took title to vehicle
free of floor plan lender's security interest in dealer's inventory even though
sale was not accompanied by transfer of certificate of title);[13] *see also Valley*

---

[13] Many of the provisions of the Texas Certificate of Title Act (COTA) are similar to
Virginia's motor vehicle titling laws.  For example, the Texas Transportation Code
states that "[a] motor vehicle may not be the subject of a subsequent sale unless the
owner designated in the certificate of title transfers the certificate of title at the time
of sale." Tex. Transp. Code Ann. § 501.071(a).  Similarly, Va. Code Ann. § 46.2-628
requires that "[t]he owner of a motor vehicle . . . when transferring or assigning his
title or interest thereto, shall . . . deliver the certificate to the purchaser or
transferee at the time of delivering the motor vehicle. . . ."  Texas law exempts
dealers from the statutory requirement to transfer the certificate of title at the time
of sale by excluding dealers from the definition of "owner." Tex. Transp. Code Ann.
§ 501.002(19).  *See Lundy v. First Nat'l Bank of El Campo (In re Dota)*, 288 B.R. 448,
456 (S.D. Tex. 2003).  Under Virginia law, a dealer is exempted from the § 46.2-628
requirement to deliver the title certificate at the time of delivering the motor vehicle
by the provisions of Va. Code Ann. § 46.2-1542(A). Interestingly, the Agreement
provides that it will be construed under Texas law, although neither party has
argued that Texas law should be applied to this case.  Nevertheless, given the
similarity between the motor vehicle titling laws, the Court's ruling would be the
same were it to apply Texas law.

In *Dota*, a floor plan lender argued that the buyer's failure to comply with the
provision in COTA requiring a transfer of a vehicle's certificate of title at the time of
sale (similar to what the Trustee contends is required under Virginia law) negated
his "buyer in the ordinary course" assertion.  The court rejected this argument,
noting the intent of the Texas legislature to exclude motor vehicle dealers from this
requirement.  "[T]he Bank's assertion that [the buyer] should have received the
certificate of title to the Silverado at the time of sale misstates the COTA's
requirements for transfer of a certificate of title pursuant to a subsequent sale by a
licensed Texas dealer . . . ." *Id.* at 461.  Likewise, the Trustee's reliance on certain

*Bank & Trust Co. v. Holyoke Cmty. Fed. Credit Union*, 121 P.3d 358, 362

(Colo. App. 2005) (when the inventory was sold, the lender's security interest

on that vehicle was extinguished, leaving it with a security interest in the

proceeds only).[14] Thus, contrary to the Trustee's concerns, a floor plan

lender's practice of holding the title certificates to its collateral will not

interfere with protecting the public from fraud because it will not enable the

lender to overcome the rights of a buyer in the ordinary course of business.[15]

---

Virginia statutes for his argument that a dealer is required to deliver the certificate
of title to the buyer simultaneously with the deliver of the vehicle is misplaced.

It is worth noting that while the specific issue was not raised, the court in
*Dota* did not question the validity of the floor plan lender's loan agreement that
required the dealer to arrange for the release of the original title from the Bank for
each vehicle sold. As in the present case, the lender was not shown as lienholder on
the title. In *Dota*, the dealer failed to apply the proceeds of the sale to the loan and
failed to request or arrange for the Bank to release the title before filing bankruptcy.
Having determined that the buyer was "a buyer in the ordinary course of business,"
the court refused to order him to deliver the vehicle to the Bank.

[14] *See also Gen. Credit, Inc. v. Winchester, Inc.*, 85 S.E.2d 201 (Va. 1955) (upholding
the claim of an innocent purchaser over that of the dealer's finance company despite
the finance company's lien having been noted on the certificate of title).

[15] The Trustee has also raised the specter of odometer fraud that may occur if the
dealer does not transfer physical possession of a certificate of title at the time a
vehicle is delivered to a buyer, claiming that both federal and state law require that
the certificate of title be the sole means of disclosing a vehicle's mileage. Once
again, the Trustee has disregarded a provision of Virginia's motor vehicle laws
applicable to dealers. Va. Code Ann. § 46.2-1532 states that "[e]very motor vehicle
dealer shall comply with all requirements of the Federal Odometer Act and § 46.2-
629 by completing the appropriate odometer mileage statement form for each vehicle
. . . [that] shall be maintained by the dealer in a manner that permits systematic
retrieval." This statute contemplates that a document other than the certificate of
title may be utilized to disclose a vehicle's mileage. Moreover, the Trustee's
assertion that in the absence of actual fraud, disclosing mileage at the time of
delivery of the vehicle on a separate form rather than on the title violates the
Federal Odometer Act has been rejected at least twice by the District Court for the
Western District of Virginia. *See Mayberry v. Ememessay, Inc.*, 201 F. Supp. 2d 687,
695 (W.D. Va. 2002) ("Even the idea that there can be a 'non-mileage violation' of an
act whose central purpose is to ensure the accurate reporting of mileage strains
credulity."); *Compton v. Altavista Motors, Inc.*, 121 F. Supp. 2d 932, 941-42 (W.D.
Va. 2000) ("even if [plaintiff] can show that an Odometer Act violation occurred, she

Whether intentional or not, the Trustee has obscured the distinction between motor vehicle dealers and non-dealer sellers in order to construct an argument that a secured floor plan lender's practice of holding titles to vehicles held for resale by a dealer is unlawful.  The Trustee has not cited, nor has the Court found, any statute or regulation prohibiting the practice.  Accordingly, the Court rejects the Trustee's contention that the practice violates Virginia's motor vehicle titling laws.  Therefore, the Court need not address the Trustee's further argument that the Agreement constitutes an unlawful, unenforceable contract.  For these reasons, the Court will dismiss the Trustee's declaratory judgment and avoidance counts (Counts I, II and IV) for failure to state a claim upon which relief may be granted.

Count III of the Amended Complaint seeks relief for VAC's violation of the automatic stay.  The automatic stay created by 11 U.S.C. § 362(a) became effective upon the Debtor's bankruptcy filing. The Trustee claims that VAC knew or should have known that the Debtor was in bankruptcy, yet "continued to operate as if no order for relief had been entered" and "attempted to, and in fact did, collect funds from the Debtor after the Petition Date by illegally holding vehicle titles to coerce the Debtor to continue to make improper and unnecessary payments."  (Amended Complaint at 7-8.)  The Trustee alleges that VAC's actions, "in addition to others, constitute an attempt by VAC to obtain property of the estate, which attempt was

cannot avoid summary judgment unless she can provide evidence sufficient to show that [the dealer] committed the violation with an intent to defraud.")

successful." *Id.*  The Trustee further alleges that VAC's stay violations caused him and the bankruptcy estate to suffer damages.  *Id.*

A party seeking damages for violation of 11 U.S.C. § 362(a) must establish three elements: (1) that a violation occurred; (2) that the violation was committed willfully; and, (3) that the violation caused actual damages. *Skillforce, Inc. v. Hafer*, 509 B.R. 523, 529 (E.D. Va. 2014).  The Trustee has alleged facts that, if proven, would satisfy these elements.  For that reason, the Court will deny VAC's motion to dismiss Count III of the Amended Complaint.

A separate order consistent with this Memorandum Opinion will issue.

Date:  February 22, 2018              /s/ Keith L. Phillips
                                    United States Bankruptcy Judge


Copies:

Entered on Docket:  February 22, 2018

Peter J. Barrett, Trustee
c/o Jeremy S. Williams
Kutak Rock LLP
901 East Byrd Street, Suite 1000
Richmond, VA 23219

Thomas D. Domonoske
Consumer Litigation Associates
763 J. Clyde Morris Blvd, Suite 1-A
Newport News, VA  23601

Dale W. Pittman
The Law Office of Dale W. Pittman, PC
112-A W. Tabb Street
Petersburg, VA  23803

Virginia Acceptance Corporation
c/o Madeline A. Trainor
Redmon, Peyton & Braswell LLP
510 King Street, Suite 301
Alexandria, VA  22314